**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1209-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

HASSAN DALLAS, a/k/a
HASAAN DALLAS, HASSON
DALLAS and DONTE WATSON,

     Defendant-Appellant.

_____

Submitted February 2, 2021 – Decided March 16, 2021

Before Judges Yannotti and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Accusation No. 14-03-0604.

Joseph E. Krakora, Public Defender, attorney for appellant (John J. Bannan, Designated Counsel, on the brief).

Jill S. Mayer, Acting Camden County Prosecutor, attorney for respondent (Linda A. Shashoua, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from an order dated July 19, 2019, which denied his petition for post-conviction relief (PCR). We affirm.

I.

We briefly summarize the relevant facts and procedural history. On October 16, 2012, at around 9:12 p.m., a police officer in the City of Camden was at a location on Pearl Street when he heard two gunshots coming from an area about one block away.

The officer went around the block and was directed to a location on Elm Street, where he observed a white male laying on the sidewalk who appeared lifeless. The officer noticed that there were bullet holes in the man's head and the center of his chest area. The man was later identified as Michael Haller.

On October 17, 2012, a medical examiner performed an autopsy and determined the cause of death was multiple gunshot wounds. Senior Investigator Lance Saunders and Detective Cheryl Campbell of the Camden County Prosecutor's Office (CCPO) canvassed the scene and found no witnesses. The following day, Saunders obtained surveillance video footage from the area, which shows the victim riding a bicycle through a pedestrian

street tunnel that extends from Sixth and Penn Streets to Sixth and Linden Streets.

In March 2013, Saunders received word that an inmate at the Camden County Correctional Facility had information about Haller's homicide. Saunders interviewed the inmate, who told him that he was friends with Eugene Harrison and defendant, and they both told him what had happened.

Harrison told the inmate that he was with defendant when Haller had approached them to purchase several hundred dollars' worth of heroin. However, Harrison did not have any drugs. According to the inmate, Harrison and defendant decided to rob Haller. Defendant went into his apartment on Elm Street and retrieved a handgun.

When defendant pulled out the weapon, Haller said he was an undercover police officer. Harrison attempted to go through Haller's pocket, but Haller pushed him away. Haller again said he was an undercover officer and they were making a big mistake. He also said backup officers were on the way. Defendant then shot Haller, and defendant and Harrison fled the scene. After defendant shot Haller, he exchanged his hooded sweatshirt with a female.

In June 2013, Saunders received a call from the CCPO and was told that L.F., defendant's mother, was in the office and wanted to report her son had shot

and killed Haller on October 16, 2012.[1]  Saunders interviewed L.F.  She said she recalled the homicide because she had gone to the store and when she returned, she saw Haller on the ground, with a bicycle on top of him.  She said that immediately after the homicide, her son did not return home and she reported him missing to the City's police department.

L.F. stated that defendant told T.J. that he shot and killed Haller.  T.J. is L.F.'s daughter and defendant's half-sister.  T.J. told L.F. what defendant said.  L.F. asked defendant how it felt to kill someone.  According to L.F., defendant replied, "it was regular."  L.F. stated that on prior occasions, she had seen defendant with a handgun, but she told him handguns were not allowed in their home.  She stated that defendant was currently incarcerated at a facility for juveniles.

Saunders then interviewed T.J.  She told Saunders that in November 2012, she was walking with defendant and he said he had shot and killed Haller.  According to T.J., defendant pointed out the area where he shot Haller.  T.J. also stated that she had seen defendant with a handgun in their home, but she did not know if it was the weapon defendant used to shoot the victim.

---

[1]  We use initials to identify certain individuals, to protect their privacy.

 A-1209-19

In July 2013, Saunders interviewed Y.S. She stated that on October 16, 2012, shortly after she heard gunshots, she saw defendant walking into the Northgate apartment complex. She said defendant asked her to switch "hoodies" with him. She gave defendant her grey hooded sweatshirt, and he gave her his black hooded sweatshirt. Defendant then exited the apartment complex.

Saunders also interviewed Harrison. He denied he was present when Haller was shot and killed. Harrison told Saunders he knew defendant. He said he and defendant sold drugs together in the City.

In September 2013, defendant's mother gave Saunders permission to question defendant. Saunders read defendant his Miranda[2] rights and interviewed him. Defendant said he had not been charged with any crime and he had nothing to say to the investigators. Thereafter, the CCPO authorized Saunders to file a juvenile complaint charging defendant with shooting and causing Haller's death.

## II.

On March 6, 2014, defendant consented to the waiver of jurisdiction in the matter from the Family Part to the Law Division. In a separate proceeding before Judge Gwendolyn Blue, defendant pled guilty to first-degree aggravated

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

5

manslaughter, contrary to N.J.S.A. 2C:11-4(a), as charged in Accusation No. 14-03-0604. Defendant entered into a cooperation agreement with the State, in which he agreed, among other things, to provide information and statements regarding Haller's robbery and murder. He agreed to testify fully and truthfully in "any and all proceedings." The State agreed to recommend that defendant be sentenced to a nineteen-year term of imprisonment, with an eighty-five percent period of parole ineligibility, pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

In his plea colloquy, defendant stated that he understood a medical examiner had determined that Haller died as a result of multiple gunshot wounds and the manner of death was homicide. Defendant said that on October 16, 2012, he and Harrison met Haller because Haller wanted to purchase drugs. Defendant stated that Harrison told him to enter his residence and get a gun to rob Haller. Defendant acknowledged that he shot Haller during the robbery.

Defendant also stated that he was aware of and disregarded a substantial and unjustifiable risk that his conduct would cause Haller's death. He said he understood his conduct posed a possibility that Haller would die. He admitted that he acted recklessly and under circumstances which manifested extreme

A-1209-19

indifference to human life and caused Haller's death. Judge Blue accepted defendant's plea.

Defendant was sentenced on May 2, 2014. Judge Blue sentenced defendant in accordance with the plea agreement to nineteen years of incarceration, with an eighty-five percent period of parole ineligibility, pursuant to NERA. The judge entered a judgment of conviction dated May 7, 2014.

Defendant appealed and challenged his sentence. The appeal was heard on our excessive sentence oral argument calendar. R. 2:9-11. We affirmed defendant's sentence, holding that it was not manifestly excessive, unduly punitive, or an abuse of discretion. State v. Dallas, No. A-5457-13 (App. Div. Oct. 27, 2014).

On July 24, 2018, defendant filed a pro se petition for PCR, alleging ineffective assistance of counsel. The court appointed counsel for defendant, and counsel filed a brief in support of defendant's petition. Judge Blue heard oral argument and denied the petition for reasons stated on the record. The judge memorialized her decision in an order dated July 19, 2019. This appeal followed.

On appeal, defendant argues that the PCR court erred by denying his petition for PCR because defendant received ineffective assistance of counsel.

Defendant contends his trial counsel was ineffective because he advised defendant to consent to the voluntary transfer of the matter from juvenile to adult court. He also contends his trial counsel was ineffective because, at sentencing, he failed to argue "strenuously" in support of certain mitigating factors, and appellate counsel was ineffective for failing to argue "strenuously" for a lesser sentence. In the alternative, defendant argues that the PCR court erred by denying his request for an evidentiary hearing because there are genuine issues of material fact.

## III.

A defendant asserting a claim of ineffective assistance of counsel must satisfy the two-part test established by the Supreme Court of the United States in Strickland v. Washington, 466 U.S. 668, 687 (1984), and later adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). Under that test, a defendant first "must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. The defendant must establish that the attorney's performance "fell below an objective standard of reasonableness" and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-88.

The defendant also must establish "that the deficient performance prejudiced the defense." Id. at 687. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Ibid.

Here, defendant argues that his trial counsel was ineffective because he advised him to consent to the voluntary waiver of jurisdiction from the Family Part to the Law Division, where he would be prosecuted as an adult. Defendant contends the only reason for the waiver "appears to be" that the prosecutor filed a motion to waive jurisdiction of the Family Part. He argues that defense counsel's advice regarding the waiver was objectively unreasonable and counsel only provided this advice so that he would not have to oppose the State's waiver motion.

Defendant further argues that if the matter had remained in the Family Part and he had been found delinquent on the murder charge, he could have been eligible for parole immediately with the court's approval, or in six years and eight months, without court approval. He asserts that as a result of his plea to

first-degree aggravated manslaughter, he will not be eligible for parole until he serves eighty-five percent of his nineteen-year sentence.

The record shows that defendant's claim regarding the advice provided concerning the waiver of jurisdiction to the Law Division consisted of one-sentence in his pro se petition for PCR. The brief filed by PCR counsel did not address this claim, and counsel's oral argument on the PCR petition was devoted entirely to the claim of ineffective assistance regarding defendant's sentence.

Furthermore, defendant did not provide the PCR court or this court with a copy of the transcript of the March 6, 2014 waiver hearing. In any event, defendant has not shown that his attorney's advice regarding the waiver of jurisdiction to the Law Division constituted ineffective assistance of counsel. Defendant did not establish that the court probably would have denied the State's waiver motion if defendant had opposed it.

The State asserts that the court probably would have granted its waiver motion even if defendant's counsel had opposed the motion. The State notes that defendant's extensive juvenile history supported its application that defendant should be tried in the Law Division as an adult.

The State also notes that defendant agreed to the waiver of jurisdiction along with the plea agreement. The State asserts that if defendant had not

entered the plea, he would have been tried on all charges, including first-degree murder. If convicted of that offense, defendant would have faced a thirty-year prison term, with thirty years of parole ineligibility. As a result of the plea agreement, defendant was able to plead guilty to first-degree aggravated manslaughter and limit his sentencing exposure to a nineteen-year sentence, with an eighty-five percent period of parole ineligibility pursuant to NERA.

We are therefore convinced that defendant failed to show that his counsel's advice concerning the waiver of jurisdiction "fell below an objective standard of reasonableness" and that counsel's advice was so erroneous that he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687-88.

We have noted that to establish a prima facie claim, "a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Defendant's claim that his trial attorney was ineffective in his advice regarding the waiver to the Law Division is a bald assertion, unsupported by the record. Defendant also failed to show that he was prejudiced by the advice provided concerning the waiver.

IV.

Defendant further argues he was denied the effective assistance of trial and appellate counsel regarding his sentence. He contends his trial attorney did not argue "strenuously" for a finding of an additional mitigating factor and a shorter sentence. He also contends his appellate counsel did not argue "strenuously" that the trial court erred by failing to find an additional mitigating factor.

At sentencing, the judge found aggravating factors three and nine. See N.J.S.A. 2C:44-1(a)(3) (risk that defendant will commit another offense); N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law). The judge also found mitigating factors six and twelve. See N.J.S.A. 2C:44-1(b)(6) (defendant has agreed to provide restitution); N.J.S.A. 2C:44-1(b)(12) (defendant was willing to cooperate with law enforcement authorities).

The judge noted that defendant has fourteen juvenile adjudications, which were for serious offenses. The judge also noted that defendant's record shows a progression from simple assault to aggravated assault and then to aggravated manslaughter. The judge found that there was "a serious, . . . real and predictable risk" defendant would commit another crime.

The judge commented that defendant was fifteen years old when he committed the offense for which he was being sentenced and stated that this was an "evil act." The judge stated that defendant had produced the weapon he used to shoot Haller, and there was no evidence that Harrison was the "mastermind" of a conspiracy to commit felony murder or exercise undue influence over defendant.

The judge noted that defendant had stated he was sorry for committing the offense but felt that defendant was not sincere in the "words" he "mumbled" in court. The judge considered the other mitigating factors and determined that they did not apply. The judge also found the plea agreement was fair and imposed the sentence recommended in that agreement.

On appeal, defendant argues that his trial attorney should have argued more "strenuously" for a lesser sentence. He contends his counsel should have made a more forceful argument for mitigating factor thirteen, N.J.S.A. 2C:44-1(b)(13) (conduct of a youthful defendant was substantially influenced by a person who was more mature than defendant).

Defendant also asserts that his trial attorney should have argued that he had a disability and an individualized education program in school. Defendant has not shown, however, that the trial court probably would have found any

13

additional mitigating factors or imposed a shorter sentence if counsel had been more forceful in raising the arguments noted.

Moreover, defendant has not shown that this court would have remanded the matter for resentencing if appellate counsel had argued more "strenuously" that the trial court erred by failing to find any additional mitigating factor and should have imposed a shorter sentence. Therefore, the record supports Judge Blue's determination that defendant failed to establish he was denied the ineffective assistance of trial or appellate counsel with regard to his sentence.

As noted, defendant also argues that the PCR court erred by denying his request for an evidentiary hearing. Such a hearing is required only if the petitioner presents a prima facie case in support of PCR, the court determines there are material issues of disputed fact that cannot be resolved based on the existing record, and a hearing is necessary to resolve the claims for relief. State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)).

As we have determined, defendant did not present a prima facie case in support of PCR. Furthermore, the existing record provided a sufficient basis for resolving defendant's claims. Therefore, the PCR court did not err by denying defendant's request for an evidentiary hearing.

14

In view of our decision, we need not consider the State's contention that defendant's PCR claims regarding his plea and sentence were procedurally barred under <u>Rules</u> 3:22-4 and 3:22-5.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION